Howard J. McClure, Esq. #141046
Aubrey J. McClure Campbell, Esq. #313033
Howard J. McClure & Associates
743 N. A St.
Oxnard, CA 93030
(805) 278-6117 * Fax (805) 278-6119
Attorneys for Petitioner

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION**

| | |
|---|---|
| HERNANDEZ-ESPINOZA, Yesenia Guadalupe,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN, Adelanto ICE Processing Center; Todd Blanche, Attorney General of The United States; Markwayne Mullin, Secretary of Homeland Security<br><br>Respondents. | Case No.<br><br>Hon.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. This petition presents a single, purely legal question: which provision of the Immigration and Nationality Act ("INA") authorizes the civil detention of a noncitizen whose removal the United States Court of Appeals for the Ninth Circuit has stayed pending its review of her petition for review. The statute's text and binding circuit precedent supply the answer. The governing provision is 8 U.S.C. § 1226(a), which permits release on bond or conditional parole—not 8 U.S.C. § 1231, the post-removal-order provision on which Respondents rely to hold Petitioner without any custody hearing whatsoever.

2. Petitioner Yesenia Guadalupe Hernandez-Espinoza ("Ms. Hernandez-Espinoza") is a citizen of El Salvador who has resided in the United States since July 2021. She is the sole parent of Anderson Geovanny Hernandez Espinoza, whom United States Citizenship and Immigration Services ("USCIS") has classified as a Special Immigrant Juvenile and to whom USCIS has granted deferred action. She was never detained during her removal proceedings. For five years she lived in the community under conditions of supervision that ICE set, including two and a half years of electronic monitoring, and she complied with all of them.

3. On August 13, 2026, she appeared at the ICE office for her scheduled monthly reporting appointment and was taken into custody there. She has been held at the Adelanto ICE Processing Center ("Adelanto") ever since.

4. Ms. Hernandez-Espinoza's removal order cannot lawfully be executed. On September 13, 2024, the Ninth Circuit ordered that the temporary stay of removal in her case continue until the mandate issues unless the court orders otherwise. See Exhibit A (Order, *Hernandez-Espinoza v. Garland*, No. 24-4154 (9th Cir. Sept. 13, 2024)). The government did not timely respond to the stay motion, and the court treated its silence as a statement of non-opposition. Id.; see 9th Cir. Gen. Order 6.4(c). That stay remains in force.

5. Nor will the stay dissolve soon. On August 14, 2026, the Ninth Circuit notified the parties that *Hernandez-Espinoza v. Blanche*, No. 24-4154, is being considered for an upcoming oral argument calendar in Pasadena, and directed counsel to review the Pasadena sitting dates for December 2026 and the subsequent sitting month in that location. See Exhibit B (Notice of Docket Activity, Aug. 14, 2026). A decision, and then the mandate, will follow at some later date still.

6. The consequence for Respondents' detention authority is dictated by statute. Section 1231(a)(1)(A) authorizes removal within a ninety-day "removal period," and § 1231(a)(1)(B)(ii) provides that where a removal order has been judicially reviewed and the court has stayed removal, the removal period does not

begin until the date of the court's final order. No such order has issued. The removal period has not begun, § 1231(a)(2) does not apply, and § 1231(a)(6)—which operates only beyond the removal period—does not apply either.

7. The Ninth Circuit has squarely so held. A noncitizen whose removal order is administratively final but judicially stayed pending review of a petition for review is detained under § 1226(a), not § 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008). That holding was reaffirmed in *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023), which confirmed that *Prieto-Romero* survives *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

8. Section 1226(a) is a bond provision. It authorizes release on bond or conditional parole, and the implementing regulations vest an Immigration Judge ("IJ") with authority to redetermine custody. 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d), 1003.19(a), 1236.1(d). Ms. Hernandez-Espinoza has received no such hearing. Respondents have not determined that she is a flight risk or a danger to the community; they have determined that the question need not be asked.

9. Ms. Hernandez-Espinoza does not ask this Court to review the merits of her removal order, which is before the Ninth Circuit, nor to second-guess a discretionary custody decision, which has never been made. She asks this Court to

hold that her detention is unlawful and to restore the liberty Respondents took from her without process.

10. In the alternative, if this Court concludes that § 1231(a)(6) supplies the authority for her detention, that detention has become unlawful. Respondents are judicially barred from removing Ms. Hernandez-Espinoza while the Ninth Circuit's stay is in effect, and her removal is therefore not significantly likely in the reasonably foreseeable future. *Zadvydas v. Davis*, 533 U.S. 678 (2001).

11. Ms. Hernandez-Espinoza accordingly seeks a writ of habeas corpus ordering her immediate release, subject to the same conditions of supervision under which she lived, without incident, for the two and a half years preceding her detention.

## JURISDICTION

12. Ms. Hernandez-Espinoza is in the physical custody of Respondents. She is detained at the Adelanto ICE Processing Center in Adelanto, California.

13. This Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

14. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

15. No provision of the INA strips this Court of jurisdiction over this petition. Ms. Hernandez-Espinoza does not challenge her order of removal, any determination underlying it, or any decision to commence proceedings or execute a removal order; review of those matters lies with the court of appeals. She challenges only the lawfulness of her civil detention, a claim that remains cognizable in habeas. See *INS v. St. Cyr*, 533 U.S. 289 (2001); *Zadvydas v. Davis*, 533 U.S. 678 (2001).

**VENUE**

16. Venue is proper in the Central District of California under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. Ms. Hernandez-Espinoza is detained in an immigration detention facility at the direction of, and is in the immediate custody of, Respondent Warden of the Adelanto ICE Processing Center. See *Rumsfeld v. Padilla*, 542 U.S. 426, 434–47 (2004). Adelanto lies in San Bernardino County, within the Eastern Division of this District.

17. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims and relevant facts occurred in this district.

## REQUIREMENTS OF 28 U.S.C. § 2243

18. The Court must grant the petition for a writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Id.

19. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). An application for the writ displaces the ordinary calendar of the judge who entertains it and is entitled to prompt action. See *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000).

## PARTIES

20. Petitioner Yesenia Guadalupe Hernandez-Espinoza, A220-376-511, is a citizen of El Salvador who has resided in the United States since July 2021. She has been in immigration detention since August 13, 2026 and is currently detained at Adelanto. After taking custody of Ms. Hernandez-Espinoza, ICE did not set bond and has conducted no custody determination of any kind.

21. Respondent Warden of the Adelanto ICE Processing Center is Ms. Hernandez-Espinoza's immediate custodian. The Warden has direct physical

custody of Ms. Hernandez-Espinoza and is responsible for the day-to-day operation of the facility in which she is detained. The Warden is sued in his or her official capacity.

22. Respondent Director, Director of the Los Angeles Field Office, ICE Enforcement and Removal Operations, is Ms. Hernandez-Espinoza's custodian by virtue of his or her supervision of the Adelanto ICE Processing Center. The Director is responsible for the detention and removal of noncitizens within the Los Angeles Field Office's area of responsibility and is sued in his or her official capacity.

23. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the INA and oversees ICE, which is responsible for Ms. Hernandez-Espinoza's detention. Secretary Mullin has ultimate custodial authority over Ms. Hernandez-Espinoza and is sued in his official capacity.

24. Respondent Department of Homeland Security ("DHS") is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

25. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive

Office for Immigration Review and the immigration court system it operates are component agencies. He is sued in his official capacity.

26. Respondent Executive Office for Immigration Review ("EOIR") is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including custody redeterminations in bond hearings.

## FACTS

### A. Personal Background

27. Ms. Hernandez-Espinoza is a native and citizen of El Salvador, born August 20, 1993. She entered the United States at or near Hidalgo, Texas, on or about July 30, 2021, accompanied by her son Anderson, and has resided here continuously since. Her address of record is 515 E. Laurel Street, Oxnard, California 93033.

28. Ms. Hernandez-Espinoza is the mother of Anderson Geovanny Hernandez Espinoza, A220-376-512, born November 4, 2015 in Ilobasco, Cabañas, El Salvador. Anderson is ten years old. See Exhibit E (certified birth certificate and translation).

29. On February 4, 2024, USCIS approved Anderson's Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, classifying him as a Special Immigrant Juvenile under 8 U.S.C. § 1101(a)(27)(J). See Exhibit C (Form I-797 Notice of Action, Feb. 4, 2024). USCIS concurrently granted Anderson

deferred action, which by the terms of the notice remains in effect for four years from the date of the notice unless terminated earlier by USCIS. Id.

30. Anderson's Special Immigrant Juvenile classification rests on his abandonment by his father. Exhibit D ¶ 1. His Salvadoran birth certificate records no father. Exhibit E. Ms. Hernandez-Espinoza is his only parent, and until August 13, 2026 she was his sole caregiver. Since her detention Anderson has been cared for by Ms. Hernandez-Espinoza's sister. That arrangement is a stopgap. A ten-year-old child whose father abandoned him and whose mother is in immigration custody has no parent available to him at all.

**B. Removal Proceedings and the Ninth Circuit's Stay of Removal**

31. On October 22, 2021, DHS filed a Notice to Appear with the Immigration Court, charging Ms. Hernandez-Espinoza under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. The Notice to Appear did not charge her as an arriving alien; DHS checked the box designating her a noncitizen present in the United States who has not been admitted or paroled. She admitted the allegations and conceded the charge, and the Immigration Judge found her removable. She designated El Salvador as the country of removal and applied for asylum, withholding of removal, and protection under the Convention Against

Torture. Her son Anderson, A220-376-512, was a respondent in the same proceedings.

32. On January 2, 2024, an Immigration Judge of the Van Nuys Immigration Court denied all three applications and ordered Ms. Hernandez-Espinoza removed to El Salvador. On June 10, 2024, the Board of Immigration Appeals dismissed her appeal, declining to reach the Immigration Judge's adverse credibility finding and affirming instead on the ground that her proposed particular social group was not cognizable. The removal order became administratively final on that date. See 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. § 1241.1(a); *Ocampo v. Holder*, 629 F.3d 923, 926 (9th Cir. 2010).

33. Ms. Hernandez-Espinoza timely petitioned the Ninth Circuit for review. Her petition is docketed as *Hernandez-Espinoza v. Blanche*, No. 24-4154 (9th Cir.).

34. On September 13, 2024, the Ninth Circuit entered an order stating that the government had not timely responded to the motion for stay of removal, that the absence of a response is treated as a statement of non-opposition, and that the temporary stay of removal continues until the mandate issues unless the court orders otherwise. See Exhibit A; 9th Cir. Gen. Order 6.4(c).

35. The stay has never been dissolved and remains in effect today.

36. On August 14, 2026, the Ninth Circuit issued a Notice of Docket Activity advising the parties that the case is being considered for an upcoming oral argument calendar in Pasadena, directing counsel to review the Pasadena sitting dates for December 2026 and the subsequent sitting month in that location, and advising that the parties would receive notice of calendar assignment approximately ten weeks before the scheduled argument date. See Exhibit B.

37. Respondents therefore cannot lawfully remove Ms. Hernandez-Espinoza. They could not have done so on the day they took her into custody, and they cannot do so now.

**C. Five Years at Liberty Under Supervision, and Detention at a Reporting Appointment**

38. Ms. Hernandez-Espinoza was never detained during her removal proceedings. She lived in the community continuously from her arrival in July 2021 until August 13, 2026, subject to conditions of supervision that ICE set and periodically adjusted. See Exhibit D (Declaration of Yesenia Hernandez Espinoza).

39. After the Immigration Judge denied her applications, ICE placed Ms. Hernandez-Espinoza on electronic monitoring. She wore an ankle monitor for an extended period, which ICE later replaced with a wrist-worn device. She has been subject to electronic monitoring for approximately two and a half years. Exhibit D ¶¶ 3, 10.

40. Her conditions of supervision required a home visit once each month and an office visit once each month. She never missed one. Exhibit D ¶¶ 7, 10.

41. The wrist-worn device malfunctions. When a charging or connectivity problem occurred, ICE would telephone Ms. Hernandez-Espinoza, direct her to appear in person the following day, examine the device, and send her home. She was never sanctioned, never found in violation, and never told that such an incident could result in her detention. Exhibit D ¶¶ 8–10.

42. On August 12, 2026, an ICE officer conducted a home visit at Ms. Hernandez-Espinoza's residence. Nothing was amiss. Exhibit D ¶ 4.

43. On August 13, 2026, Ms. Hernandez-Espinoza appeared at the ICE office for her scheduled office visit, as her conditions of supervision required. She waited in the lobby. An officer she did not know called her name and directed her to the last office at the end of a hallway. Her assigned officer was not present. Two agents were waiting in that office. They displayed badges and told her she was being detained. Exhibit D ¶¶ 5–6.

44. The only reason the officers gave was that she had "fallas"—failures—with the monitoring device. Exhibit D ¶ 6. Ms. Hernandez-Espinoza received no advance notice, no written statement of reasons, and no opportunity to respond. She does not recall being shown any paperwork at all. Exhibit D ¶¶ 6, 11.

45. She has been detained at Adelanto since August 13, 2026. ICE has not set bond and has not conducted a custody determination. Respondents' stated position is that Ms. Hernandez-Espinoza is not eligible for bond because an administratively final order of removal has been entered against her.

46. No Immigration Judge, immigration officer, or other adjudicator has made any finding that Ms. Hernandez-Espinoza poses a risk of flight or a danger to the community. No adjudicator has considered the question at all.

**D. Ms. Hernandez-Espinoza Is Neither a Flight Risk Nor a Danger to the Community**

47. Ms. Hernandez-Espinoza has resided in the United States for five years. She has worked and maintained a stable home for her son throughout that period. Exhibit D ¶ 2. Her sister lives in the community and is caring for Anderson while she is detained.

48. She is the sole parent of a ten-year-old child with an approved Special Immigrant Juvenile petition and a concurrent grant of deferred action valid through February 4, 2028. See Exhibit C. Anderson has lived with his mother his entire life, including the journey to the United States in July 2021. Her incentive to appear could hardly be stronger.

49. Respondents have never alleged that she is a danger to anyone.

50. She has appeared at every stage of her immigration proceedings, has been represented by counsel throughout, and has actively litigated her case in the court of appeals for nearly two years, obtaining a stay of removal that the government elected not to oppose. She also complied with conditions of supervision, including electronic monitoring, for approximately two and a half years, and was taken into custody at the very appointment that order required her to attend. Respondents' own supervision records are the best available evidence that she is not a flight risk.

51. Without relief from this Court, Ms. Hernandez-Espinoza faces continued detention of indefinite length—potentially another year or more—while her petition for review proceeds toward argument, decision, and mandate.

## LEGAL FRAMEWORK

52. The INA prescribes three basic forms of detention for noncitizens.

53. First, 8 U.S.C. § 1226 governs the detention of noncitizens who are in the United States pending a decision on whether they are to be removed. Section 1226(a) is the discretionary default: the noncitizen may be detained, but may also be released on bond or on conditional parole. The regulations provide for an initial custody determination by ICE and for custody redetermination by an Immigration Judge. 8 C.F.R. §§ 236.1(c)(8), 236.1(d), 1003.19(a), 1236.1(d). Section 1226(c)

mandates detention for noncitizens removable on certain enumerated criminal grounds. See *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

54. Second, 8 U.S.C. § 1225(b) governs the detention of applicants for admission—noncitizens arriving at, or recently arrived at, the border. That provision is not at issue here.

55. Third, 8 U.S.C. § 1231 governs detention after entry of a final order of removal and the commencement of the removal period. Section 1231(a)(1)(A) directs the Attorney General to remove the noncitizen within ninety days. Section 1231(a)(2) makes detention mandatory during that ninety-day period. Section 1231(a)(6) permits, but does not require, continued detention beyond the removal period.

56. Critically, § 1231(a)(1)(B) defines when the removal period begins. It begins on the latest of three dates: the date the order of removal becomes administratively final; if the removal order is judicially reviewed and a court orders a stay of removal, the date of the court's final order; or, if the noncitizen is detained or confined other than under an immigration process, the date of release from that detention or confinement. 8 U.S.C. § 1231(a)(1)(B)(i)–(iii); see *Avilez v. Garland*, 69 F.4th 525, 530–31 (9th Cir. 2023).

57. Sections 1231(a)(2) and 1231(a)(6) are therefore keyed to the removal period. Neither operates before that period begins.

## I. THE REMOVAL PERIOD HAS NOT BEGUN, AND § 1231 SUPPLIES NO AUTHORITY FOR PETITIONER'S DETENTION

58. The Ninth Circuit has stayed Ms. Hernandez-Espinoza's removal and has not entered a final order. See Exhibit A. Under the plain text of § 1231(a)(1)(B)(ii), the removal period has not begun.

59. Because the removal period has not begun, the ninety-day mandatory-detention provision of § 1231(a)(2) is inoperative, and § 1231(a)(6)—which by its terms authorizes detention only beyond the removal period—is inoperative as well.

60. The Ninth Circuit has so held. In *Prieto-Romero*, the court considered a noncitizen with an administratively final order of removal whose removal had been stayed pending his petition for review, and held that his detention was authorized by § 1226(a) rather than § 1231 precisely because the removal period had not commenced. 534 F.3d at 1062. Detention authority under § 1226(a), the court explained, ends only when the court of appeals or the Supreme Court enters a final order denying the petition for review. Id.

61. *Casas-Castrillon*, decided by the same panel on the same day, reached the same conclusion as to § 1231: because none of the conditions in § 1231(a)(1)(B) had been satisfied, the removal period had not begun, and the petitioner could not be detained under § 1231 while his removal order remained judicially stayed. *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d

942, 947 (9th Cir. 2008), abrogated in part on other grounds by *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023). *Avilez* abrogated *Casas-Castrillon*'s separate holding that detention authority shifts from § 1226(c) to § 1226(a) once judicial review begins. It did not disturb the § 1231 analysis, and it expressly reaffirmed that *Prieto-Romero* remains good law on the scope of § 1226(a). *Avilez*, 69 F.4th 525.

62. That holding controls this case. Ms. Hernandez-Espinoza is in an identical posture: an administratively final order of removal, a timely petition for review, a judicial stay of removal entered by the court of appeals, and no final order from that court.

63. Nor does the qualification recognized in *Prieto-Romero* apply here. The court there observed that the removal period is not postponed by every judicially entered stay—only by a stay entered in connection with judicial review of the removal order itself. 534 F.3d at 1060 n.6. Ms. Hernandez-Espinoza's petition for review is a petition for review of the final order of removal itself. Her removability and her applications for relief were adjudicated together in a single proceeding under 8 U.S.C. § 1229a, and the denial of those applications merged into the order of removal that the Board affirmed on June 10, 2024. Judicial review of that order is governed by 8 U.S.C. § 1252(a)(1) and reaches all questions arising from the proceeding. 8 U.S.C. § 1252(b)(9). The Ninth Circuit's stay was entered

in that proceeding, and it is the removal order itself that the stay holds in abeyance. Section 1231(a)(1)(B)(ii) applies by its terms.

64. This case is therefore unlike those in which a noncitizen subject to a reinstated order of removal is placed in withholding-only proceedings. In that posture, the Supreme Court has held that § 1231, not § 1226, supplies the detention authority, because the underlying removal order is already final and the withholding-only proceeding does not disturb its finality. *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021). No prior order of removal has been reinstated against Ms. Hernandez-Espinoza, and she was never placed in withholding-only proceedings. She entered the United States a single time, on or about July 30, 2021, and has never been removed from it. There is accordingly no prior order capable of reinstatement under 8 U.S.C. § 1231(a)(5). Her removability and her applications for relief were adjudicated together in a single proceeding under § 1229a, and both are before the court of appeals.

65. Respondents' contrary position—that entry of an administratively final order alone extinguishes bond eligibility—would read § 1231(a)(1)(B)(ii) out of the statute. Congress specifically addressed the case of a judicially stayed removal order and specified that the removal period awaits the court's final order. Respondents may not invoke a detention authority that Congress made contingent on a removal period that has not started.

## II. SECTION 1226(a) GOVERNS PETITIONER'S DETENTION, AND SHE IS ELIGIBLE FOR RELEASE

66. Section 1226(a) authorizes release on bond or conditional parole, and the implementing regulations confer on an Immigration Judge the authority to redetermine ICE's custody decision. 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d), 1003.19(a), 1236.1(d).

67. Ms. Hernandez-Espinoza is not subject to any mandatory-detention provision. She is not removable on a criminal ground triggering § 1226(c).

68. Nor is she subject to mandatory detention under § 1225(b)(2)(A). The Ninth Circuit has held that § 1225(b)(2)(A) reaches only noncitizens seeking entry at the border, and that noncitizens present without admission who are apprehended in the interior of the United States are detained under § 1226(a), with its attendant right to seek release on bond. *Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir. July 30, 2026). DHS did not charge Ms. Hernandez-Espinoza as an arriving alien; it charged her under section 212(a)(6)(A)(i) as a noncitizen present in the United States without admission. She has lived in this country since July 2021, and Respondents took her into custody not at the border but at an ICE office in the interior, where she had reported as her order of supervision required.

69. Section 1226(a) therefore governs by elimination, as well as by its own terms. Section 1231 does not apply because the removal period has not begun. Section 1225(b) does not apply because Ms. Hernandez-Espinoza was not

apprehended at the border. Section 1226(c) does not apply because she is not removable on a covered criminal ground. What remains is § 1226(a), the INA's default detention provision, and it is a bond provision. She is bond-eligible.

70. That Respondents previously released Ms. Hernandez-Espinoza on an order of supervision does not change the analysis. The label Respondents affix to a release does not determine which statute authorizes a detention; the statute does. Because the removal period has not begun, the release operated as a release on conditional parole under § 1226(a)(2)(B), whatever form ICE used to document it. Respondents cannot manufacture § 1231 authority by choosing a § 1231 form.

71. She has never received a bond hearing. Respondents have not denied bond after considering it; they have declined to consider it at all, on the erroneous premise that the statute forecloses the inquiry.

72. Detention nominally "under § 1226(a)" that categorically excludes any custody determination is not detention under § 1226(a) at all. The availability of bond is the provision's defining feature and the reason Congress distinguished it from the mandatory-detention provisions elsewhere in the INA.

## III. DETENTION OF INDEFINITE PROSPECTIVE DURATION WITHOUT ANY CUSTODY DETERMINATION VIOLATES DUE PROCESS

73. Civil immigration detention is a significant deprivation of liberty subject to the Due Process Clause of the Fifth Amendment. Freedom from bodily restraint lies at the core of the liberty the Clause protects. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

74. Even where detention is statutorily authorized, due process requires that a deprivation of physical liberty of this magnitude be justified before a neutral decisionmaker. See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (assuming without deciding that *Mathews* supplies the framework for immigration-detention due process claims).

75. Ms. Hernandez-Espinoza has been detained for since August 13, 2026 without any adjudicator ever asking whether her confinement serves any purpose. Respondents have never argued that she is a danger or a flight risk, because they have never been required to.

76. What matters here is not how long Ms. Hernandez-Espinoza has been detained but how long Respondents' theory would permit them to detain her. Her case will not be argued before December 2026 at the earliest, see Exhibit B, and a decision and mandate will follow at some further point thereafter. On Respondents' theory she may be held for the entire remaining life of her appeal—a year or more—without a single custody hearing, because on that theory no hearing is ever

available to her. The defect is categorical, not temporal, and it does not become more constitutional by being raised early. *Demore v. Kim*, 538 U.S. 510 (2003), upheld mandatory detention of brief duration incident to removal proceedings; it does not sanction detention of indefinite length untethered to any individualized justification.

77. Where detention under § 1226 becomes prolonged, the Ninth Circuit has held that the government must justify continued detention by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011). Respondents may invoke *Rodriguez Diaz*, which declined to require a second bond hearing with that burden. *Rodriguez Diaz* turned on the procedural protections the petitioner had already received: he had been given a bond hearing, represented by counsel, and could seek a further hearing on changed circumstances. Id. at 1208–10. The court framed the question as fact-specific. Ms. Hernandez-Espinoza has received none of those protections. Whatever process due process requires at a custody hearing, it cannot be satisfied by providing no hearing at all.

78. The allocation of the burden matters here for that reason. At an ordinary § 1226(a) custody hearing the noncitizen bears the burden of proof. *Rodriguez Diaz*, 53 F.4th at 1213–14. To place that burden on Ms. Hernandez-Espinoza now, in a confinement that no adjudicator has ever reviewed,

would assign the entire risk of error to the person whose liberty is at stake and would reward Respondents for having withheld the hearing in the first place.

79. The constitutional claim is independent of the statutory question. Even if Respondents were correct about which provision authorizes her detention, a due process challenge to prolonged confinement must be resolved on its own terms. See *Avilez*, 69 F.4th 525 (remanding the petitioner's due process claim for decision in the first instance after rejecting her statutory claim); *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018).

## IV. RESPONDENTS REVOKED MS. HERNANDEZ-ESPINOZA'S RELEASE WITHOUT NOTICE OR A HEARING

80. Ms. Hernandez-Espinoza was never detained during her removal proceedings. For five years she was at liberty in the community under conditions of supervision that Respondents themselves designed and administered, and Respondents took that liberty away without any process at all.

81. A noncitizen released from immigration custody has a liberty interest in remaining free that the Due Process Clause protects. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (a noncitizen released on bond has a liberty interest in remaining out of custody comparable to that of a person on parole or probation); see *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972) (the liberty of a

person released under supervision includes the ability to work and to maintain family relationships, and its termination requires process).

82. The Supreme Court has held that the Constitution ordinarily requires some kind of hearing before the government deprives a person of liberty, and has treated post-deprivation process as the exception reserved for cases in which predeprivation process is impracticable. *Zinermon v. Burch*, 494 U.S. 113, 127, 129 (1990). Nothing made predeprivation process impracticable here. Respondents knew exactly when Ms. Hernandez-Espinoza would appear, because they had ordered her to appear.

83. Courts in this circuit have accordingly required a showing of materially changed circumstances before a noncitizen at liberty may be taken into custody. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Respondents identified none.

84. The single reason the arresting officers offered was that Ms. Hernandez-Espinoza had "fallas" with her monitoring device. Exhibit D ¶ 6. That cannot bear the weight Respondents place on it. The device is a wrist-worn unit that malfunctions. Exhibit D ¶ 10. On every prior occasion, ICE resolved the problem by telephoning Ms. Hernandez-Espinoza, having her appear the next day, inspecting the device, and sending her home without consequence. Exhibit D ¶¶

8–9. Respondents treated these incidents as routine for two and a half years and never warned her that they could result in detention. Exhibit D ¶ 8. A circumstance the agency itself has repeatedly treated as immaterial cannot become a material change on the day the agency decides to detain.

85. The day before her arrest, an ICE officer visited Ms. Hernandez-Espinoza's home and found nothing amiss. Exhibit D ¶ 4. She had never missed a home visit or an office visit. Exhibit D ¶¶ 7, 10. The only thing that changed between August 12 and August 13, 2026 was Respondents' decision to detain her.

86. Independently, if Respondents maintain that § 1231 governs, their own regulations prescribe the procedures for revoking a release. Revocation requires notice of the reasons, an opportunity to respond, and prompt review of the custody decision. 8 C.F.R. §§ 241.4(l), 241.13(i). Respondents followed none of those procedures.

87. A district court in this District has ordered relief on materially these facts, directing that a detainee be released immediately subject to the conditions of his prior order of supervision and enjoining Respondents from re-detaining him without complying with 8 C.F.R. §§ 241.4(l) and 241.13(i). *Hakim v. Noem*, No. 5:26-cv-00145-CV (DTBx) (C.D. Cal. Jan. 22, 2026).

88. A bond hearing granted now would not cure this violation. The deprivation was complete when Respondents took Ms. Hernandez-Espinoza into custody without process, and at an ordinary custody hearing she would bear the burden of justifying her own release from a detention that was unlawful at its inception. *Rodriguez Diaz*, 53 F.4th at 1213–14. The remedy for an unlawful deprivation of liberty is restoration of that liberty.

## V. ANY PRUDENTIAL EXHAUSTION REQUIREMENT SHOULD BE WAIVED

89. To the extent any prudential exhaustion requirement applies, it should be waived. A court may waive prudential exhaustion where administrative remedies are inadequate or not efficacious, where their pursuit would be futile, or where irreparable injury will result. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

90. Respondents' position is categorical: they maintain that a noncitizen subject to an administratively final order of removal is ineligible for bond regardless of a judicial stay. Ms. Hernandez-Espinoza has not sought a custody redetermination, because on Respondents' own stated premise no Immigration Judge would entertain one. An appeal from such a ruling to the Board of Immigration Appeals would take many months and would be decided by a body applying the same premise, under the supervision of a Respondent in this action.

91. More fundamentally, the relief Ms. Hernandez-Espinoza seeks is not a bond hearing. Her liberty was taken without process, and no administrative custody proceeding can give it back. A hearing convened now would ask whether she should be released going forward. It would not ask whether Respondents were entitled to detain her in the first place, and it would place the burden on her rather than on them. *Rodriguez Diaz*, 53 F.4th at 1213–14. The writ is the only remedy adequate to the injury.

92. Meanwhile the injury—detention—accrues daily and cannot be remedied retrospectively. The writ exists to supply a swift remedy in precisely this situation. *Fay*, 372 U.S. at 400.

## VI. ALTERNATIVELY, IF § 1231(a)(6) GOVERNS, RESPONDENTS HAVE NOT PROVIDED THE CUSTODY REVIEW THAT PROVISION REQUIRES

93. If this Court concludes that § 1231(a)(6) supplies the authority for Ms. Hernandez-Espinoza's detention, that authority is neither unlimited nor unconditional.

94. Section 1231(a)(6) permits, but does not require, detention beyond the removal period. *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022). The regulations promulgated in the wake of *Zadvydas* require the agency to conduct custody reviews of noncitizens held past the removal period, 8 C.F.R. § 241.4, and,

on request, to determine whether there is a significant likelihood of removal to the designated country or to a third country in the reasonably foreseeable future, 8 C.F.R. § 241.13(a). If the agency finds no such likelihood, it must promptly arrange for release under appropriate conditions. 8 C.F.R. § 241.13(g)(1).

95. Respondents have conducted no such review. A detention authority that is discretionary by its own terms cannot be exercised by default. On Respondents' own theory of the governing statute, they owe Ms. Hernandez-Espinoza the process those regulations prescribe, and they have not provided it.

96. Ms. Hernandez-Espinoza further contends that her removal is not significantly likely in the reasonably foreseeable future. *Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001); see also *Clark v. Martinez*, 543 U.S. 371 (2005). A federal court of appeals has ordered that she not be removed until its mandate issues. See Exhibit A. Argument is not expected before December 2026, see Exhibit B; a decision and mandate will follow months later; and if the petition for review is granted, removal may never occur at all.

97. In all events, the *Zadvydas* inquiry is reached only if § 1231 applies. For the reasons set out above, it does not.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of the Immigration and Nationality Act, 8 U.S.C. §§ 1226(a), 1231(a)

98. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

99. Respondents detain Ms. Hernandez-Espinoza under a claimed authority, 8 U.S.C. § 1231, that does not apply, because the removal period defined by § 1231(a)(1)(B)(ii) has not begun and will not begin until the Ninth Circuit enters its final order.

100. Ms. Hernandez-Espinoza's detention is instead governed by 8 U.S.C. § 1226(a), under which she is eligible for release on bond or conditional parole.

101. By detaining Ms. Hernandez-Espinoza without providing any custody determination or bond hearing, Respondents are acting in violation of the INA.

### COUNT II

### Violation of the Due Process Clause of the Fifth Amendment — Revocation of Release Without Notice or Hearing

102. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

103. Ms. Hernandez-Espinoza had a constitutionally protected liberty interest in remaining at liberty under her order of supervision.

104. Respondents revoked that release and took her into custody without advance notice, without a statement of reasons, and without any opportunity to be heard, either before or at the time of the deprivation.

105. Respondents have identified no materially changed circumstance justifying the revocation, and Ms. Hernandez-Espinoza had complied with every condition of her supervision.

106. If § 1231 governs her detention, Respondents also failed to comply with the revocation procedures prescribed by 8 C.F.R. §§ 241.4(l) and 241.13(i).

107. The revocation of Ms. Hernandez-Espinoza's release therefore violated the Due Process Clause of the Fifth Amendment, and the appropriate remedy is restoration of the liberty she lost.

## COUNT III

### Violation of the Due Process Clause of the Fifth Amendment — Detention Without Any Custody Determination

108. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

109. Ms. Hernandez-Espinoza has a constitutionally protected liberty interest in freedom from physical restraint.

110. Respondents have detained her since August 13, 2026 without any hearing before a neutral decisionmaker at which the government has been required to justify her continued confinement.

111. Given the length of her detention to date, the further length of time before her petition for review will be resolved, and the complete absence of any individualized determination, that deprivation of liberty does not comport with due process.

**COUNT IV (PLED IN THE ALTERNATIVE)**

**Violation of 8 U.S.C. § 1231(a)(6), 8 C.F.R. §§ 241.4 and 241.13, and *Zadvydas v. Davis***

112. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

113. If § 1231(a)(6) governs Ms. Hernandez-Espinoza's detention, that provision authorizes but does not compel her continued confinement, and its implementing regulations require periodic custody review and, on request, a determination whether removal is significantly likely in the reasonably foreseeable future. 8 C.F.R. §§ 241.4, 241.13.

114. Respondents have not conducted the custody reviews those regulations require.

115. Nor is Ms. Hernandez-Espinoza's removal significantly likely in the reasonably foreseeable future, because a judicial stay entered by the Ninth Circuit bars her removal until that court rules and its mandate issues.

116. Her continued detention therefore exceeds the authority § 1231(a)(6) confers.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Issue a writ of habeas corpus ordering Respondents to release Ms. Hernandez-Espinoza from custody immediately, subject to the conditions of her prior order of supervision;

c. Enjoin Respondents from re-detaining Ms. Hernandez-Espinoza absent notice, a statement of reasons, and a hearing before a neutral adjudicator at which Respondents bear the burden of establishing by clear and convincing evidence that she is a danger to the community or a flight risk, and, if § 1231 is held to govern, absent compliance with 8 C.F.R. §§ 241.4(l) and 241.13(i);

d. Declare that Ms. Hernandez-Espinoza's detention is governed by 8 U.S.C. § 1226(a) and that she is eligible for release on bond or conditional parole;

e. In the alternative, order Respondents to conduct the custody review required by 8 C.F.R. §§ 241.4 and 241.13 within seven days, and to release Ms. Hernandez-Espinoza under appropriate conditions of supervision if no significant likelihood of removal in the reasonably foreseeable future is shown;

f. Enjoin Respondents from transferring Ms. Hernandez-Espinoza outside the jurisdiction of this Court during the pendency of these proceedings;

g. Order Respondents to show cause forthwith pursuant to 28 U.S.C. § 2243;

h. Award Petitioner costs and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any other basis provided by law; and

i. Grant such other and further relief as this Court deems just and proper.

Dated: August 24, 2026

Respectfully submitted,

/s/ Howard J. McClure
Howard J. McClure

Counsel for Petitioner

Howard J. McClure, Esq. #141046
Aubrey J. McClure Campbell, Esq. #313033

Howard J. McClure & Associates
1825 N. Oxnard Blvd., Ste. 4
Oxnard, CA 93030
(805) 278-6117 * Fax (805) 278-6119
Attorneys for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242 AND 28 U.S.C. § 1746

I, Howard J. McClure, declare:

1. I am counsel for Petitioner, Yesenia Guadalupe Hernandez-Espinoza, in the above-captioned matter. Pursuant to 28 U.S.C. § 2242, I submit this verification on her behalf.

2. I have personal knowledge of the facts stated below based on my representation of Petitioner and my review of the record in this matter.

3. I have reviewed the foregoing Petition for Writ of Habeas Corpus and the accompanying exhibits. The factual statements therein are true and correct to the best of my knowledge, information, and belief, based on my personal knowledge and the records maintained in the ordinary course of my representation.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 24, 2026, at Oxnard, California.

/s/ Howard J. McClure
Howard J. McClure
Counsel for Petitioner